United States Bankruptcy Court
Southern District of Texas
**ENTERED**
August 23, 2023
Nathan Ochsner, Clerk

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 23-30283 |
| **BOBBY L. POPE, JR.,** | § | |
| | § | |
| Debtor. | § | |
| | § | |
| | § | CHAPTER 7 |

## MEMORANDUM ORDER ON OBJECTION TO EXEMPTIONS

Before the Court is the Objection to Homestead Exemption (ECF 20) filed by Christopher R. Murray, Trustee, the Debtor's Response (ECF No. 27), the Trustee's Reply (ECF No. 34), and the Debtor's Sur-Reply (ECF No. 38). A hearing was held on August 22, 2023, and testimony was elicited. For the following reasons the objection is overruled.

At the inception of the hearing Trustee's counsel announced that the Trustee would be pursuing the objection only under Section 522(o) of Title 11. Section 522(o) reduces the value of a debtor's homestead, for purposes of a state homestead exemption, to the extent of any addition to the value of the homestead on account of a disposition of nonexempt property made by the debtor—with intent to hinder, delay, or defraud creditors—during the ten years prior to the bankruptcy filing. Debtor has claimed a Texas homestead exemption and the Trustee's objection to it revolves around a $125,000.00 payment described below.

Pursuant to Federal Rule of Bankruptcy Procedure 4003(c) in any hearing under this rule, the objecting party has the burden of proving that the exemptions are not properly claimed. After hearing on notice, the court shall determine the issues presented by the objections. The Court ultimately finds that the Trustee has failed in his burden as to "a disposition of nonexempt property" finding that the property transferred, i.e., the $125,000.00 payment was exempt homestead proceeds.

The Chapter 7 petition of the debtor was filed on January 31, 2023. At the time of the filing the debtor owned and claimed as his homestead real property located at 27011 Bridleway Circle, Magnolia, Texas 77355 ("Bridleway"). That real property had been purchased in 2017[1] for cash sourced from the debtor's spouse. Later, the debtor's spouse instituted a construction loan with Spirit of Texas Bank, and a house was built on the property. While construction of the Bridleway property was pending the debtor lived in and claimed a valid homestead interest in property known as 25006 Wintergreen Dr. Magnolia, Texas 77255 ("Wintergreen") which had been acquired in 2014.

---

[1] ECF Nos. 35-1


Wintergreen was sold on July 9, 2021, and the debtor netted $187,211.94[2] of which $125,000.00 was used to pay down the construction loan with Spirit of Texas Bank, and thereafter a modified note with monthly payment terms was executed. To this point the facts are uncontested. If the debtor's proceeds from the sale of Wintergreen are homestead, then the claim under Section 522(o) must fail, if the proceeds are not homestead then the Court must determine if the disposition of nonexempt property was made with the intent to hinder, delay or defraud creditors during the ten years prior to the bankruptcy filing.

The facts of the case at this point become convoluted. The debtor disclosed that he no longer lived at Wintergreen sometime in May 2021, and the Trustee claims the debtor is therefore estopped from claiming the sales proceeds from Wintergreen of $187,211.94 as homestead proceeds. The sales proceeds, if exempt would remain exempt for six months for reinvestment in another homestead.[3] The Trustee points to three adverse declarations made by the debtor (1) the original bankruptcy petition filed in this case, (2) the first set of schedule amendments [both of which clearly indicate that the debtor lived at Wintergreen from 10/31/2014 to 5/2021 before moving to Bridleway], [3] the debtor's testimony from his first meeting of creditors which again confirms that in May of 2021 he moved from Wintergreen to Bridleway.

Wintergreen, however, was not sold until July 9, 2021, a date after the petition, amended schedules and debtor's testimony indicates he was already living at Bridleway. If Bridleway was his homestead on or after May of 2021 because he had already moved there, and he intended for it to be his homestead, he may have legally abandoned Wintergreen as his homestead in May. No debtor may have two homesteads. If at the time of the sale of Wintergreen, the debtor's homestead was Bridleway, then proceeds from the sale of Wintergreen could not be exempt as his homestead, it having previously been abandoned. Therefore, the payment of $125,000.00 which was sourced from the sales proceeds could not have been exempt and 11 U.S.C. § 522(o) potentially applies. This is the Trustee's position.

The debtor disputes the contentions made by the Trustee claiming that he moved slowly from Wintergreen to Bridleway, that there was a transition period that was not complete until after the sale of Wintergreen due to ongoing repairs at Wintergreen [painting inside and repairs outside] that were required in order to make it ready for sale and that Bridleway's construction was incomplete. He and his wife point to the storage of personal effects at Wintergreen until its sale, that they showered at Wintergreen because the bathroom at Bridleway was not complete for a period of time, and that they still received mail at Wintergreen.[4]

The timeline of relevant events from the evidence is as follows:

2014 Wintergreen is purchased by the debtor and his spouse. It is uncontested to be the debtor and his spouse's homestead until May of 2021. The dispute as to homestead status arises between May of 2021 and its sale on July 9, 2021.

---

[2] ECF No. 35-12
[3] TEX.PROP.CODE.ANN. § 41.001(c)(Vernon 2006).
[4] ECF No. 35-18 and 35-19 suggest that as of June 14, 2021, the debtor was receiving mail at Wintergreen as mail to Bridleway was being returned by the United State Postal Service.

November 19, 2017, Bridleway was purchased by debtor and his spouse. (ECF 35-1).

2018 Bridleway land is cleared for home building. The testimony is clear that at some future point the debtor and his spouse intended for Bridleway to become the debtor's homestead.

January 13, 2020, a construction loan application is made for Bridleway by debtor's spouse. (ECF No. 35-2). The debtors are now moving forward with their intent to make this their homestead at some point in time in the future.

March 6, 2020, Debtor's wife executes a construction loan for Bridleway in the amount of $266,000.00 to Spirit of Texas Bank. (ECF 35-3). The process of future conversion of the homestead from Wintergreen to Bridleway progresses.

May of 2021, Debtor and his wife move from Wintergreen to Bridleway.

June 2, 2021, Debtor and wife sign a contract with real estate agent for sale of Wintergreen. (ECF No. 35-7). Bridleway's construction is very near completion, and it has been complete enough for the debtor to reside in it in since May of 2021.

June 3, 2021. An uncontested Summary Judgment of $493,137.12 is taken against the debtor by Sarah Lemke and Lance Truong.

June 25, 2021, earnest money contract for Wintergreen is executed. (ECF 35-10).

July 2, 2021, an amendment to the earnest money contract indicates that some of the debtor's personal property remains at the Wintergreen property and needs to be moved prior to the sale. (ECF 35-11). Wintergreen is ready to be sold.

July 9, 2021, Wintergreen is sold.

July 12, 2021, Debtor receives sales proceeds from Wintergreen of $187,211.94. (ECF 35-13).

July 20, 2021, Spirit of Texas Bank modifies and extends the construction loan with monthly payments of $719.48, to balloon at maturity on June 6, 2026, based on a principal reduction by the debtor of $124,034.33. (ECF No. 35-6).

August 2, 2021, Debtor writes a check for $125,000.00 to Spirit of Texas Bank from the Wintergreen sales proceeds. (ECF 35-15).

August 3, 2021, the check for $125,000.00 is negotiated by Spirit of Texas Bank to pay down the construction loan.

January 31, 2023, Debtor files Chapter 7.[5]

---

[5] ECF No. 1.

At issue for the Court is the debtor's homestead transition from Wintergreen to Bridleway. The evidence is clear that the debtor and his spouse in 2017 purchased the property on Bridleway to eventually transition to it as their homestead. This occurred over a period of time as shown by the timeline above. This, however, was not seamless. There is a small gap and the gap is the basis of the Trustee's objection. The debtor and his wife clearly intended over time to (1) purchase a lot (2) build a new house on the lot (3) sell their homestead (4) transfer equity from the old homestead to the new homestead. While this may have been the intent the transaction occurred in non-concurrent steps.

Typically, a debtor seeking to reinvest homestead equity sells his home, then at some future date purchases a new home investing the equity from the prior homestead sale. No one would object to this type of homestead equity transfer. Here the transfer occurred differently because the debtor was building his new homestead and his old homestead sold after he had moved from the old to the new. This is not unlike those who seek to build a new house, while living in their current homestead with the expectation of an equity transfer. The debtor's intent here was exactly the same as the debtor who sells and then buys in the future a new homestead, that is the transfer of equity from old homestead to new homestead.

The Court holds that as of the date of sale on July 9, 2021, the debtor was not living in the property on Wintergreen and was instead living in Bridleway. There is nothing in the evidence that indicates otherwise, and the Court discounts the revisionist testimony of the debtor. If one reviews the amendment to the earnest money contract and importantly the pictures attached, it indicates that some personal property remains at the Wintergreen property prior to its sale, however it is de minimis and the debtor could not have been living at Wintergreen for some period of time prior to its sale. The debtor may actually have been planning to abandon the personal property pictured in the amendment. There is nothing in the amendment or the trial record that indicates the debtor was actually using Wintergreen as his physical homestead as of the date of sale. There may have been the storage of miscellaneous personal property until just before the sale, but it was removed pursuant to the amendment to the earnest money contract.

The Court cannot hold that homestead rights specifically attached to the Wintergreen sale proceeds due to typical physical homestead characteristics because these typical physical homestead characteristics have already moved to Bridleway in May of 2021. At the time of the sale the Court finds that there are no rational homestead claims to Wintergreen other than the debtor's transitional argument that was his intent to transfer his equity, however, it is on this basis the Court determines that the Wintergreen sales proceeds were in fact homestead proceeds.

The Court concludes that the transition of homestead from Wintergreen to Bridleway was long planned from the purchase of Bridleway in 2017, through its construction and until occupancy in May of 2021. If that transaction was not seamless, i.e. there was a small delay between the debtor moving into the new property before the sale of the old property and this destroys the homestead exemption for the sales proceeds, then this Court has clearly committed error and concedes it as such.

The homestead exemption in Texas is a broad and should be liberally construed. The Court views this opinion as grounded in a liberal interpretation of the exemption. While all of the physical

characteristics of abandonment of the Wintergreen homestead existed as of the date of sale, the long-standing intent to transition the equity of Wintergreen had not occurred, and the Court cannot hold that a small delay in transition destroys the debtor's claim of homestead to the sales proceeds.

The Trustee cites Note 10 in *In re Davis*, 170 F.3d 475 citing *In re England*, 975 F.2d 1168, 1174 (5th Cir. 1992) for support of his position that "if the debtor acquires a second homestead before selling the first homestead, the first homestead is deemed abandoned and is no longer exempt from seizure." The Court find these cases distinguishable on their facts. England filed a petition for relief under Chapter 11 of the Bankruptcy Code. This was later converted to a Chapter 7 proceeding based upon 11 U.S.C. § 522(b)(2)(A). England elected to exempt property based upon Texas law. Among other things, he claimed his current ranch as a rural homestead and a prior note from the proceeds from the sale of his prior homestead, both purportedly exempt property under section 41.001(a) and (c) of the Texas Property Code. The Court ruled against this double exemption claim. It disallowed the exemption of the proceeds, holding that as presented by England, the proceeds constituted a second homestead. Such is not the case before the Court. The current case involves not a claim of homestead against two separate assets which are Wintergreen and Bridleway, but a transition of equity from the Wintergreen homestead to the Bridleway homestead. The debtor has always only had one homestead. Wintergreen was his homestead until it was sold and Bridleway thereafter.[6]

Accordingly, the Court holds that the $125,000.00 payment made to Sprit of Texas Bank on August 2, 2023, by the debtor was from homestead proceeds exempt from execution pursuant to the Texas Property Code from the date of sale of July 9, 2021 for a period of six months.

Given the Court's holding of homestead proceeds the Court need not reach the issue whether the disposition was with the intent to hinder, delay or defraud creditors during the ten years prior to the bankruptcy filing.

Therefore, the Trustee's objection to exemptions is overruled.

SIGNED 08/23/2023

_____
Jeffrey Norman
United States Bankruptcy Judge

---

[6] *Parks v. Buckeye Retirement Co., L.L.C. (In re Parks)*, 2006 WL 1662945 (S.D. Tex. June 9, 2006) ("But even if a debtor plans to sell a homestead and lists it for sale, the debtor retains the property as his homestead until he sells it," citing *In re Baker,* 307 B.R. 860 (Bankr. N.D. Tex. 2003)).