United States Bankruptcy Court
Southern District of Texas
**ENTERED**
September 16, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 23-30283 |
| **BOBBY L. POPE, JR.**, | § | |
| | § | |
| Debtor. | § | |
| | § | |
| | § | CHAPTER 7 |

## MEMORANDUM OPINION ON OBJECTION TO EXEMPTIONS AFTER REMAND

This case was remanded to the Bankruptcy Court after appeal to the District Court, which reversed the order overruling the trustee's objection to the debtor's homestead exemption (ECF No. 57). The sole issue on appeal to the District Court was whether the debtor abandoned his homestead on Wintergreen prior to the sale of the Wintergreen property on July 9, 2021. That issue was remanded to the Bankruptcy Court to determine remaining fact questions. Once those questions are resolved, and if the Bankruptcy Court finds that the debtor did abandon the homestead prior to July 9, 2021, then the Bankruptcy Court can determine if the debtor abandoned the Wintergreen property with the "intent to hinder, delay or defraud a creditor" pursuant to 11 U.S.C. § 522(o). The Court has reviewed the pleadings, the testimony and evidence from the hearing held on August 22, 2023, and issues this revised Memorandum Opinion sustaining the trustee's objection.

This matter was brought before the Court on the chapter 7 trustee, Christopher R. Murray, (the "Trustee")'s Objection to Homestead Exemption (ECF 20), the debtor's Response (ECF No. 27), the Trustee's Reply (ECF No. 34), and the Debtor's Sur-Reply (ECF No. 38). A hearing was held on August 22, 2023, and testimony was elicited.

At the inception of the hearing Trustee's counsel announced that the Trustee would be pursuing the objection only under Section 522(o) of Title 11. Section 522(o) reduces the value of a debtor's homestead, for purposes of a state homestead exemption, to the extent of any addition to the value of the homestead on account of a disposition of nonexempt property made by the debtor—with intent to hinder, delay, or defraud creditors—during the ten years prior to the bankruptcy filing.

The debtor in this case, Bobby L. Pope, Jr. ("Pope") has claimed a Texas homestead exemption, and the Trustee's objection to the exemption revolves around a $125,000.00 payment described below. Pursuant to Federal Rule of Bankruptcy Procedure 4003(c) in any hearing under this rule, the objecting party has the burden of proving that the exemptions are not properly claimed. After hearing, the Court determines the issues presented by the objections. The Court ultimately finds in this case that the Trustee has sustained his burden, that Pope abandoned his homestead on Wintergreen prior to its sale on July 9, 2021, and that the property transferred, i.e., the $125,000.00 payment was non-exempt proceeds.

# FACTS

In 2014, Pope purchased real property located at 25006 Wintergreen Drive, Magnolia, Texas 77255.[1] ("Wintergreen"). It is uncontested that the Debtor and his wife lived at Wintergreen and validly claimed it as their homestead until May 2021.

In 2017 Pope's wife purchased raw land located at 27011 Bridleway Circle, Magnolia, Texas 77355 ("Bridleway") using funds from her retirement to pay for the property in cash.[2] The land was originally purchased as either investment property or land where Pope and his wife might eventually build a home. In March of 2020, Pope began construction of a new home at Bridleway. To finance the construction of Bridleway house, Pope's wife took out a construction loan from Spirit of Texas Bank for $266,000 in March 2020. While construction of the Bridleway house was pending Pope lived in and claimed a valid homestead interest in Wintergreen. In May 2021, Pope and his wife moved from Wintergreen to Bridleway.[3] Wintergreen was sold on July 9, 2021, and Pope netted $187,211.942 of which $125,000.00 was used to pay down the construction loan with Spirit of Texas Bank, and thereafter a modified note with monthly payment terms was executed for Bridleway.

Prior to filing for bankruptcy, Pope had a business called Pope Remodeling. Pope Remodeling contracted with Sarah Lemke and Lance Truong (collectively "the Lemke Parties") for a construction project on October 5, 2017.[4] Pope sued the Lemke Parties in state court on May 23, 2019.[5], The Lemke Parties counterclaimed in June of 2019. The Lemke Parties then filed a motion for summary judgment on their counterclaims on April 30, 2021.[6] A final judgment was granted in favor of the Lemke Parties on June 3, 2021 in the amount $141,478.02, plus treble damages of $282,956.04, attorneys fees of $68,703.06 totaling $493,137.12.[7] The state court then appointed a receiver on January 19, 2022.[8] Pope testified he never paid the receiver and did not have the money to pay her.

Pope filed the Chapter 7 petition on January 31, 2023. At the time of the filing Pope owned and claimed Bridleway as his homestead. To this point the facts are uncontested.

The facts surrounding the move from Wintergreen to Bridleway from May of 2021 to July of 2021 is where the parties disagree. The Trustee points to three adverse declarations made by Pope (1) the original bankruptcy petition filed in this case, (2) the first set of schedule amendments [both of which clearly indicate that the debtor lived at Wintergreen from 10/31/2014 to 5/2021 before moving to Bridleway], and [3] the debtor's testimony from his first meeting of creditors which again confirms that in May of 2021 he moved from Wintergreen to Bridleway. Wintergreen, however, was not sold until July 9, 2021, a date after the bankruptcy petition, amended schedules

---

[1] ECF No. 52, Transcript, Page 42
[2] ECF No. 52, Transcript, Page 100
[3] ECF No. 52, Transcript, Page 52
[4] ECF No. 37-6, page 3.
[5] ECF No. 52, Transcript, Page 20, and ECF No. 37-2
[6] ECF No. 37-6
[7] ECF No. 37-7
[8] ECF No. 52, Transcript, Page 29 and ECF No. 37-8

and debtor's testimony indicates he was already living at Bridleway.  If Bridleway was his homestead on or after May of 2021 because he had already moved there, and he intended for it to be his homestead, he may have legally abandoned Wintergreen as his homestead in May 2021 prior to its sale on July 9, 2021.

The debtor disputes the contentions made by the Trustee claiming that he moved slowly from Wintergreen to Bridleway, that there was a transition period that was not complete until after the sale of Wintergreen due to ongoing repairs at Wintergreen [painting inside and repairs outside] that were required to make it ready for sale and that Bridleway's construction was incomplete.  He and his wife point to the storage of personal effects at Wintergreen until its sale, that they showered at Wintergreen because the bathroom at Bridleway was not complete for a period of time, and that they still received mail at Wintergreen.[9]

## ISSUES FOR ANALYSIS

The Trustee claims that Pope abandoned the Wintergreen property prior to its sale and therefore Pope is estopped from claiming the sales proceeds from Wintergreen of $187,211.94 as homestead proceeds.  The sales proceeds, if exempt, would remain exempt for six months for reinvestment in another homestead.[10]  No debtor may have two homesteads.  If at the time of the sale of Wintergreen, the debtor's homestead was Bridleway, then proceeds from the sale of Wintergreen could not be exempt as his homestead, it having previously been abandoned.  Therefore, the payment of $125,000.00 which was sourced from the sales proceeds could not have been exempt and 11 U.S.C. § 522(o) potentially applies.

If Pope's proceeds from the sale of Wintergreen are homestead, then the claim under Section 522(o) must fail. If the proceeds are not homestead then the Court must determine if the disposition of nonexempt property was made with the intent to hinder, delay or defraud creditors during the ten years prior to the bankruptcy filing.

## ABANDONMENT

Because Pope claims a homestead exemption under Texas law in the bankruptcy filing, Texas law governs.  Whether Pope abandoned Wintergreen is a question of fact.  Abandonment of a homestead is an affirmative defense, and the party opposing the homestead claim, carries the burden.[11] Under Texas law, in order to establish abandonment of homestead, there mut be both the cessation or discontinuance of use of the property as a homestead  coupled with the intent to permanently abandon the homestead."[12]   To establish a homestead's abandonment "it must be undeniable clear and beyond almost the shadow, at least (of) all reasonable grounds of dispute, that there has been a total abandonment with an intention not to return and claim the exemption."[13] The legal test here therefore is whether Pope ceased using Wintergreen as his homestead before

---

[9] ECF No. 35-18 and 35-19 suggest that as of June 14, 2021, the debtor was receiving mail at Wintergreen as mail to Bridleway was being returned by the United State Postal Service.
[10] TEX.PROP.CODE.ANN. § 41.001(c)(Vernon 2006).
[11] *In re Perry*, 345 F.3d 303, 319 (5th Cir. 2003).
[12] *In re Comu*, 542 B.R. 371, 385 (Bankr. N.D. Tex. 2015) (internal citations omitted).
[13] *Id at 396* (internal quotation marks omitted).

July 9, 2021, and did so with the intent to never again use it for homestead purposes. The Trustee, as the objecting party, has the burden of demonstrating that the homestead rights have been terminated."[14]

The best evidence of an abandonment of residential homestead is that a new and permanent home has been acquired and occupied.[15] This is the thrust of the Trustee's argument. The establishment of a new and permanent home could include the acquisition of another home, removal of the family from one dwelling to another, its occupancy and use as a homestead, and an absence of acts evidencing an intention to return to the former home.[16]

Although Pope claimed at trial that he still lived at Wintergreen after May 2021, the Court rejects this "revisionist testimony" and finds that "[t]here is nothing in the records that indicates" the Debtor continued to live at Wintergreen after May 2021." On June 2, 2021, Pope placed Wintergreen on the market.[17] Bridleway's construction is very near completion, and it has been complete enough for Pope to reside in it in since May of 2021. On June 3, 2021, an uncontested Summary Judgment of $493,137.12 is taken against Pope by Sarah Lemke and Lance Truong. The Harris County District Clerk has been given Bridleway as Pope's address as of June 9, 2021.[18] On June 25, 2021, an earnest money contract for Wintergreen is executed.[19] On July 2, 2021, an amendment to the earnest money contract indicates that some of the debtor's personal property remains at the Wintergreen property and needs to be moved prior to the sale.[20] Wintergreen is ready to be sold.

The debtor's intent here was exactly the same as the debtor who sells and then buys in the future a new homestead, that is the transfer of equity from old homestead to new homestead. The Court holds that as of the date of sale on July 9, 2021, the debtor was not living in the property on Wintergreen and was instead living at Bridleway. There is nothing in the evidence that indicates otherwise, and the Court discounts the revisionist testimony of Pope. If one reviews the amendment to the earnest money contract and importantly the pictures attached, it indicates that some personal property remains at the Wintergreen property prior to its sale, however it is de minimis and the debtor could not have been living at Wintergreen for some period of time prior to its sale. Pope may actually have been planning to abandon the personal property pictured in the amendment. There is nothing in the amendment or the trial record that indicates Pope was actually using Wintergreen as his physical homestead as of the date of sale. There may have been the storage of miscellaneous personal property until just before the sale, but it was removed pursuant to the amendment to the earnest money contract. The Court cannot hold that homestead rights specifically attached to the Wintergreen sale proceeds due to typical physical homestead characteristics because these typical physical homestead characteristics have already moved to Bridleway in May of 2021. Furthermore, the Court finds that Pope's intent was to cease the use

---

[14] *In re Perry, supra* at 311.
[15] *In re Comu*, supra at 386.
[16] *In re Cyr*, 605 B.R. 784 (Bankr. W.D. Tex. 2019) *citing Kendall Builders, Inc. v. Chesson*, 149 S.W.3d 796, 809 (tex. App.-austin, 2004, pet denied).
[17] ECF No. 35-7
[18] ECF Nos. 35-18 and 35-19.
[19] ECF No. 35-10
[20] ECF No. 35-11.

of Wintergreen for homestead purposes prior to its sale. At the time of the sale the Court finds that there are no rational homestead claims to Wintergreen.

## 11 U.S.C. 522(o)

In August 2021, the Debtor used $125,000.00 of the Wintergreen sale proceeds to pay down the construction loan on Bridleway (TR page 58, 87), thus increasing the value of his equity in that property.

The debtor has always only had one homestead. Wintergreen was his homestead until it was abandoned and Bridleway thereafter. Accordingly, the Court holds that the $125,000.00 payment made to Sprit of Texas Bank on August 2, 2023, by the debtor was not from homestead proceeds.

11 U.S.C. 522(o) provides:

> **o)** For purposes of subsection (b)(3)(A), and notwithstanding subsection (a), the value of an interest in—
> **(1)**
> real or personal property that the debtor or a dependent of the debtor uses as a residence;
> **(2)**
> a cooperative that owns property that the debtor or a dependent of the debtor uses as a residence;
> **(3)**
> a burial plot for the debtor or a dependent of the debtor; or
> **(4)**
> real or personal property that the debtor or a dependent of the debtor claims as a homestead;
> shall be reduced to the extent that such value is attributable to any portion of any property that the debtor disposed of in the 10-year period ending on the date of the filing of the petition with the intent to hinder, delay, or defraud a creditor and that the debtor could not exempt, or that portion that the debtor could not exempt, under subsection (b), if on such date the debtor had held the property so disposed of.

There is no dispute that the Wintergreen property was disposed of within 10 years of the filing of the bankruptcy case, as it was sold on July 9, 2021, and the bankruptcy was filed on January 31, 2023. This Court has already found that the $125,000 in sales proceeds was non-exempt as the Wintergreen property was not exempt when it was sold. Again, there is no dispute that Pope used $125,000 of the sales proceeds to reduce the debt associated with his existing homestead, the Bridleway property. Given the Court's holding of non-homestead proceeds the Court must now reach the issue whether the disposition was with the intent to hinder, delay or defraud creditors during the ten years prior to the bankruptcy filing. Whether a debtor acts with

"actual intent to hinder, delay, or defraud" is a fact specific inquiry.[21] The phrase "intent to hinder, delay, or defraud" is not defined in the Bankruptcy Code. The Fifth Circuit looks to the phrase as being in the disjunctive and construes it as being three separate states of mind.[22] Thus, if Pope intended to hinder, or delay or defraud a creditor, Section 522(o) applies. The Trustee's allegations are that Pope had actual intent to hinder or defraud his creditors.

In support of these allegations, the Trustee looked to "badges of fraud" under Texas law, consisting of the following: : (1) whether a transfer or obligation was to an insider; (2) whether a debtor retained possession or control of the property transferred after the transfer; (3) whether a transfer or obligation was concealed; (4) whether, before a transfer was made or an obligation was incurred, a debtor had been sued or threatened with suit; (5) whether a transfer was of substantially all a debtor's assets; (6) whether a debtor absconded; (7) whether a debtor removed or concealed assets; (8) whether the value of the consideration received by a debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (9) whether a debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (10) whether the transfer occurred shortly before or shortly after a substantial debt was incurred; and (11) whether a debtor transferred the essential assets of a business to a lienor who transferred the assets to an insider of the debtor.[23]

The evidence at the hearing that supported the Trustee regarding the existence of these badges of fraud consisted of the testimony and documentary evidence that Pope transferred the sales proceeds to himself and his wife to pay off liens on Bridleway, his current homestead. In addition, Pope had been threatened by a suit and in fact, a judgment was rendered against him just prior to the sale of Wintergreen.

The Trustee also alleged that Pope intended to conceal the sales proceeds from the receiver that was appointed by the state court to execute the judgment against Pope. Pope's testimony was that he felt wronged by Ms. Lemke, that he did not pay her any monies under the judgment, and he did not think that Ms. Lemke "deserved" any money under the judgment,[24] and he "didn't want to pay her, no."[25] However, Pope also testified that he disclosed to the receiver that he had sold Wintergreen.[26] The Court does not find that Pope intended to conceal the sales proceeds from the receiver.

Pope testified he hired bankruptcy counsel in August of 2022.[27] Prior to filing the bankruptcy on January 31, 2023, the receiver was actively trying to collect on the judgment and was filing motions to show cause and to compel in the state court.[28] Pope's testimony reflects his clear intent to hinder a creditor.

---

[21] *In re Wiggains*, 2015 WL 1954438 (Bankr. N.D. Tex. Apr. 27, 2015), aff'd, 848 F.3d 655 (5th Cir. 2017) citing *In re Dennis*, 330 F.3d 396, 701 (5th Cir. 2003).
[22] *Matter of Wiggains*, 848 F.3d 655 (5th Cir. 2017).
[23] Tex. Bus. & Com. Code Ann.§ 24.005(b).
[24] ECF No. 52, Transcript, pages 27-28.
[25] ECF No. 52, Transcript, page 40.
[26] ECF No. 52, Transcript, page 45.
[27] ECF No. 52, Transcript, page 49.
[28] ECF No. 37-10 – 37-13

Accordingly, the Court finds that the debtor did abandon the homestead prior to July 9, 2021, that the proceeds from the sale of Wintergreen were not exempt and that pursuant to 11 U.S.C. 522(o) the debtors homestead exemption should be reduced by $125,000.00 the amount of the Wintergreen sale proceeds used to pay down the construction loan on Bridleway.

**SO ORDERED.**

SIGNED 09/16/2024

_____
Jeffrey Norman
United States Bankruptcy Judge